## SUMMONS

| | |
|---|---|
| Attorney(s) | Callagy Law, P.C. |
| Office Address | 650 From Road |
| | Suite 565 |
| Town, State, Zip Code | Paramus, NJ 07652 |
| Telephone Number | (201) 261-1700 |
| Attorney(s) for Plaintiff | Daniel C. Nowak, Esq. |

University Spine Center o/a/o John T.

**Superior Court of New Jersey**

| Passaic | COUNTY |
|---|---|
| Law | DIVISION |

Docket No: PAS-L-2816-17

Plaintiff(s)

Vs.      *PLANS, LLC*
Oxford Health ~~Insurance, Inc.~~

**CIVIL ACTION
SUMMONS**

Defendant(s)

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

s/ Michelle Smith

Clerk of the Superior Court

DATED:      09/07/2017

Name of Defendant to Be Served:      Oxford Health Insurance, Inc.

Address of Defendant to Be Served:      48 Monroe Turnpike, Trumbull, CT 06611

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

PASSAIC SUPERIOR COURT
PASSAIC COUNTY COURTHOUSE
77 HAMILTON STREET
PATERSON          NJ 07505

                                        TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (973) 247-8176
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   AUGUST 28, 2017
                    RE:     UNIVERSITY SPINE CENTER VS OXFORD HEALTH
                    DOCKET: PAS L -002816 17

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON RAYMOND A. REDDIN

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     003
AT:  (973) 247-8198 EXT 8198.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDAN
WITH  R.4:5A-2.
                         ATTENTION:

                              ATT: DANIEL C. NOWAK
                              CALLAGY LAW
                              650 FROM ROAD   SUITE 565
                              PARAMUS          NJ 07652

JURPEA0

**Appendix XII-B1**

| **CIVIL CASE INFORMATION STATEMENT** (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| | PAYMENT TYPE: ☐CK ☐CG ☐CA |
| | CHG/CK NO. |
| Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 **Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed** | AMOUNT: |
| | OVERPAYMENT: |
| | BATCH NUMBER: |



| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Daniel C. Nowak, Esq. | (201) 261-1700 | Passaic |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Callagy Law, P.C. | RECEIVED and FILED Superior Court of New Jersey $L-2816-17$ |

| OFFICE ADDRESS | | DOCUMENT TYPE |
|---|---|---|
| 650 From Road, Suite 565 Paramus, NJ 07652 | AUG 25 2017 PASSAIC COUNTY | Complaint |
| | | JURY DEMAND  ■ YES  ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| University Spine Center on assignment of John T. | University Spine Center on assignment of John T. v. Oxford Health Insurance, Inc. |

| CASE TYPE NUMBER (See reverse side for listing) 599 | HURRICANE SANDY RELATED? ☐ YES  ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES.  ■ NO IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING? ☐ Yes  ■ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES  ■ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)  ☐ NONE  ■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ Yes  ■ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain) ☐ FAMILIAL  ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ Yes  ■ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ Yes  ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED? ☐ Yes  ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *Daniel C Nowak*

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502 BOOK ACCOUNT (debt collection matters only)
505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
506 PIP COVERAGE
510 UM or UIM CLAIM (coverage issues only)
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (summary action)
999 OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305 CONSTRUCTION
509 EMPLOYMENT (other than CEPA or LAD)
599 CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605 PERSONAL INJURY
610 AUTO NEGLIGENCE – PROPERTY DAMAGE
621 UM or UIM CLAIM (includes bodily injury)
699 TORT – OTHER

**Track III - 450 days' discovery**
005 CIVIL RIGHTS
301 CONDEMNATION
602 ASSAULT AND BATTERY
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 COMPLEX CONSTRUCTION
514 INSURANCE FRAUD
620 FALSE CLAIMS ACT
701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 292 | PELVIC MESH/BARD |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 289 | REGLAN | 601 | ASBESTOS |
| 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 | PROPECIA |
| 291 | PELVIC MESH/GYNECARE | 624 | STRYKER LFIT CoCr V40 FEMORAL HEADS |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category** ☐ **Putative Class Action** ☐ **Title 59**

CALLAGY LAW, P.C.
Daniel C. Nowak, Esq. (Bar No. 19027-2016)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, New Jersey 07652
Phone: (201) 261-1700
Fax: (201) 549-6244
E-mail: dnowak@callagylaw.com

*Attorneys for Plaintiff, University Spine Center*

**RECEIVED and FILED**
Superior Court of New Jersey

**AUG 2 5 2017**

**PASSAIC COUNTY**

| | |
|---|---|
| UNIVERSITY SPINE CENTER, on assignment of John T., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: PASSAIC COUNTY |
| Plaintiff, | |
| v. | DOCKET NO.: L - 2816 - 17 |
| OXFORD HEALTH INSURANCE, INC., | CIVIL ACTION |
| Defendant. | COMPLAINT |

University Spine Center ("Plaintiff"), on assignment of John T. ("Patient"), by way of Complaint against Oxford Health Insurance, Inc. ("Defendant"), asserts:

## THE PARTIES

1.      At all relevant times, Plaintiff was a healthcare provider in the County of Passaic, State of New Jersey.

2.      Upon information and belief, Defendant is primarily engaged in the business of providing and/or administering health care plans ("Plans") or policies ("Policies") and was present and engaged in significant activities in the State of New Jersey to sustain this Court's exercise of *in personam* jurisdiction.

## ANATOMY OF THE CLAIM

3.      This dispute arises from Defendant's failure to properly reimburse Plaintiff for the medically necessary and reasonable services provided to Defendant's participant or insured, i.e., Patient.

4.      On May 17, 2016 and December 6, 2016 Plaintiff provided medically necessary and reasonable services to Patient. See Exhibit A attached hereto.

5.      Specifically, on May 17, 2016, Patient underwent the following procedures: anterior cervical diskectomy and decompression and bilateral foraminotomy at C6-C7, placement of intervertebral device with PEEK cage at C6-C7 for fusion, placement of anterior cervical plate for fusion with the DePuy Eagle cage with locking screws at C6-C7. Autograft, allograft, fluoroscopy for radiographic interpretation, and microscope for microsurgical techniques were also used in the performance of the surgery. See Id.

6.      On December 6, 2016, Patient underwent a bilateral lumbar laminectomy at L3-L4 with bilateral foraminotomy and partial facetectomies. Microscope for microsurgical techniques was used bilaterally at L3-L4 in addition to fluoroscopy for radiographic interpretation to aid in the performance of the surgery. See Id.

7.      Plaintiff obtained an assignment of benefits from Patient in order to bring this claim under the Employee Retirement Income Security Act of 1974, 29 USC §1002, et seq. ("ERISA"). See Exhibit B attached hereto.

8.      Pursuant to the assignment of benefits, Plaintiff prepared Health Insurance Claim Forms ("HICFs") formally demanding reimbursement totaling $166,602.00 from Defendant for the medically necessary and reasonable services rendered to Patient. See Exhibit C attached hereto.

9.     Defendant, however, only allowed reimbursement totaling $6,735.77 for the above-referenced treatment. See Exhibit D attached hereto.

10.     Plaintiff engaged in the applicable administrative appeals process maintained by Defendant. See Exhibit E attached hereto.

11.     Further, Plaintiff requested, among other items, a copy of the Summary Plan Description, Plan Policy, and identification of the Plan Administrator/Plan Sponsor. See Id.

12.     Defendant failed to remit additional payment in response to Plaintiff's appeals and also failed to produce the requested documents mentioned above.

13.     Upon information and belief, Defendant is the Claims Administrator for the applicable Plan for Patient.

14.     Taking into account any known deductions, copayments and coinsurance, Defendant's reimbursement amounts to an underpayment of $159,866.23.

15.     Accordingly, Plaintiff brings this action for breach of contract, recovery of the outstanding balance, and Defendant's breach of fiduciary duty.

## COUNT ONE

## BREACH OF CONTRACT

16.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1-15 of this Complaint and incorporates same by reference hereto.

17.     Patient was entitled to payment of health benefits from Defendant pursuant to a health Plan administered by Defendant.

18.     Patient assigned that right to payment of health benefits to Plaintiff.

19.     Plaintiff filed a claim for payment of those health benefits.

20. Upon information and belief, Defendant has failed to make full payment of the health benefits Patient and Plaintiff are entitled to under the Plan or Policy.

21. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

**WHEREFORE,** Plaintiff demands judgment against Defendant, as follows:

a. For an Order directing Defendant to pay to Plaintiff $159,866.23;

b. For an Order directing Defendant to pay to Plaintiff all benefits Plaintiff would be entitled to pursuant the Plan or Policy issued or administered by Defendant;

c. For compensatory damages and interest;

d. For attorneys' fees and costs of suit; and

e. For such other and further relief as the Court may deem just and equitable.

## COUNT TWO

### FAILURE TO MAKE ALL PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)

22. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-21 of this Complaint and incorporates same by reference hereto.

23. Plaintiff avers this Count to the extent ERISA governs this dispute.

24. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a Plan.

25. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient

26. Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

27. Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA Plan and Policy.

28. Upon information and belief, Defendant has failed to make payment pursuant to the controlling Plan or Policy.

29. Plaintiff also alleges that Defendant's decision to deny reimbursement was wrongful.

30. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

   a.     For an Order directing Defendant to pay to Plaintiff $159,866.23;

   b.     For an Order directing Defendant to pay to Plaintiff all benefits Patient would be entitled to pursuant the Plan or Policy issued by Defendant;

   c.     For compensatory damages and interest;

   d.     For attorneys' fees and costs of suit; and

   e.     For such other and further relief as the Court may deem just and equitable.

## COUNT THREE

### BREACH OF FIDUCIARY DUTY UNDER
### 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)

31. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-30 of this Complaint and incorporates same by reference hereto.

32. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

33.　　Plaintiff seeks redress for Defendant's breaches of fiduciary duty and/or breaches of co-fiduciary duty under 29 U.S.C. § 1132(a)(3)(B), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a).

34.　　29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

35.　　Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1)

36.　　29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

37.　　Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such

other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

38.     Here, when Defendant acted to deny payment for the medical bills at issue herein, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

39.     Here, Defendant breached its fiduciary duties by:

1.   Failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations;

2.   Participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

3.   Failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and

4.   Wrongfully withholding money belonging to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.      For an Order directing Defendant to pay to Plaintiff $159,866.23;

b.      For an Order directing Defendant to pay to Plaintiff all benefits Patient would be entitled to pursuant the Plan or Policy issued by Defendant;

c.      For compensatory damages and interest;

d.      For attorneys' fees and costs of suit; and

e.      For such other and further relief as the Court may deem just and equitable.

### TRIAL COUNSEL DESIGNATION

Daniel C. Nowak, Esq., is hereby designated as Trial Counsel in the above matter.

## R. 4:5-1(b)(2) CERTIFICATION

Pursuant to R. 4:5-1(b)(2), I hereby certify that the matter in controversy is not the subject of any other action pending in any court, is not the subject of a pending arbitration proceeding and is not the subject of any other contemplated action or arbitration proceeding, except as may be set forth below:

**None.**

I further certify that I know of no non-parties who should be joined in the action pursuant to R. 4:28, or who may be subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts, except as may be set forth below:

**None.**

Dated: Paramus, New Jersey
        August 21, 2017

Respectfully submitted,

CALLAGY LAW, P.C.

By:

Daniel C. Nowak, Esq.
Mack Cali Centre II
650 From Road – Suite 558
Paramus, New Jersey 07652
Phone: (201) 261-1700
Fax: (201) 549-6244
E-mail: dnowak@callagylaw.com

*Attorneys for Plaintiff, University Spine Center*

# EXHIBIT A

MILLENNIUM HEALTH CARE OF CLIFTON
925 CLIFTON AVENUE, SUITE 201
CLIFTON, NJ  07013

OPERATIVE REPORT

PATIENT NAME:          ▆▆▆▆▆ John
DATE OF SURGERY:       05/17/16
PATIENT MRN#:          02830-16
PHYSICIAN:             Kumar Sinha, M.D.

PREOPERATIVE DIAGNOSES:
1.   Cervical disk herniation and stenosis at C6-7.
2.   Cervical spondylosis, C6-7.

POSTOPERATIVE DIAGNOSES:
1.   Cervical disk herniation and stenosis at C6-7.
2.   Cervical spondylosis, C6-7.

PROCEDURES PERFORMED:
1.   Anterior cervical diskectomy and decompression and
     bilateral foraminotomy at C6-7.
2.   Placement of intervertebral device with a PEEK cage at C6-7
     for fusion.
3.   Placement of anterior cervical plate for fusion with the
     DePuy Eagle cage with locking screws at C6-7.
4.   Use of microscope for microsurgical dissection.
5.   Use of fluoroscopy for radiographic interpretation.
6.   Use of autograft, allograft and bone graft.

CO-SURGEON:  Peter DeNoble, M.D.

ANESTHESIA:  General anesthesia was used.

BLOOD LOSS:  Less than 50 mL.

DRAINS:  Hemovac drain was used.

DISPOSITION:  Neuromonitoring was utilized.  The patient
tolerated the procedure well.  The patient was taken to the
postoperative recovery room in stable condition.

INDICATIONS FOR PROCEDURE:  The patient is a 52-year-old male
with a history of neck pain for quite some time.  He also has
lower back pain, but the neck pain did concern for him as well.
He had bilateral arm pain worse on the right than the left.  He
had conservative treatment modalities including physical therapy
and epidural injections for quite some time.  The symptoms did
not improve.  At this point, he was seeking treatment options

KS/SH/andovmt086/FST-191:6538B
D:  05/24/2016 05:31 p CST
T:  05/25/16 06:09 A CST

RE: ▓▓▓▓, John
OPERATIVE REPORT
PAGE 2

including possibility of surgery. He had failed conservative
care at this point and surgery was recommended; treatment
options that would involve decompression and fusion at the
level. The patient had severe neural foraminal stenosis
degenerative changes at that level and as a result, fusion
operation was recommended. The rest of the cervical spine
looked healthy and without any significant issues. The nature
of the operation, risks and benefits and alternatives of the
treatment were discussed with the patient in great detail. The
patient understood the risks and benefits, and wanted to proceed
with the planned operation. The risks included, but not limited
to the possibility of complications, the risks included
neurological injury, paralysis, pseudoarthrosis, focal nerve
root injury, dysphagia, soft tissue injury, vascular injury,
need for future surgery, additional disease, and other medical
complications including pulmonary emboli, stroke, and death.
The patient understood them all, and wanted to proceed with the
planned operation. He was medically optimized and scheduled for
surgery. He asked appropriate questions that were all answered
in a satisfactory manner.

DESCRIPTION OF PROCEDURE: The patient was identified in the
preoperative holding area, was given IV antibiotics, was taken
to the operating room, where a time-out was held with the
surgical team, anesthesia team, and nursing team. He was
intubated successfully with the head held in neutral. The leads
for SCDs and EMGs were applied and utilized throughout the
entirety of the case. Sequential compression stockings were
placed. The patient was positioned on the operating room table
with the head held in slight degree of extension. The arm was
laid to the side and gentle traction was applied. The cervical
spine then anteriorly was prepped and draped in sterile fashion.
A second time-out was called confirming the correct patient and
the correct planned operation. The patient's level of surgery
was identified using a C-arm intensifier. At that point, a
left-sided paramedian incision was made over the C6-7 level.
The skin was cut and underlying soft tissues were dissected to
the level of the platysma. Once that was accomplished, the skin
flaps were raised. The platysma muscle was cut and retracted
laterally and elevated. The plane between the
sternocleidomastoid and the strap muscles was elevated. The
plane was bluntly dissected anteromedially between the carotid
sheath and the esophagus onto the spine. The prevertebral
fascia was palpated and traction was applied. The longus colli

RE: ▮▮▮▮▮, John
OPERATIVE REPORT
PAGE 3

was visualized and apical fascia was dissected out.  Once this
was accomplished, the longus colli bilaterally were elevated.
The C6-7 level was identified for surgery.  Left and right, and
up and down retractors were placed and the C6-7 level was
confirmed for surgery again.  Once this was done, microscope was
brought in and the rest of the procedure was carried down under
direct microscopic vision.  Caspar pins were inserted.
Annulotomy was carried out.  Distraction was applied.  At this
point, using a combination of high-speed drill bur, Kerrison
punch rongeurs, and curettes, complete diskectomy was carried
out from uncinate to uncinate.  The posterior longitudinal
ligament was visualized.  The bilateral foraminotomy was carried
out.  The uncinate processes were flattened out with placement
of the trial implant, a size 7L trial was found to have a good
fit.  The endplates were prepared once the decompression was
carried out in a satisfactory fashion under microscope.  It was
filled with autograft, allograft, and bone graft along with
demineralized bone matrix and gently impacted into place under
fluoroscopic guidance.  Once this was done, a 12 mm plate was
positioned and appropriate size screws and holes were made and
screws were placed in the body of the C6-7 in a secured fashion.
The screws were tightened and locked into the plate.  Once this
was accomplished, final radiographs revealed good placement of
all the implants with good reduction and distraction of the
collapsed disk space and foraminal decompression.  A deep
Hemovac drain was placed and brought through a separate stab
incision.  Through the entire process, there was excellent
hemostasis, which was achieved with a combination of
electrocautery and standard bipolar touch.  Gelfoam was
utilized.  We irrigated prior to the closure of the wound.  Once
this was done, the retractors were removed.  The platysma muscle
was allowed to approximate and closed with 3-0 Vicryl sutures,
subcutaneous tissues were closed with 3-0 Vicryl suture as well,
and the skin was closed with 4-0 Monocryl subcuticular running
stitch followed by use of Dermabond, Steri-Strips, and Mastisol.

RE: ███████ John
OPERATIVE REPORT
PAGE 4

Sterile dressing was applied. The patient was placed in cervical collar and transferred to the stretcher, awakened from anesthesia, and taken to the postanesthesia recovery room in stable condition.


Kumar Sinha, M.D.

KS/GB/andovmt006/FST-19165386
D: 05/24/2016 05:31 p CST
T: 05/25/16 06:09 A CST

MILLENNIUM HEALTH CARE OF CLIFTON
925 CLIFTON AVENUE, SUITE 201
CLIFTON, NJ 07013

OPERATIVE REPORT

PATIENT NAME:          ████████, John
DATE OF SURGERY:       12/06/16
PATIENT MRN#:          02833-16
PHYSICIAN:             Kumar Sinha, M.D.

PREOPERATIVE DIAGNOSES:
1.   Lumbar spinal stenosis at L3-4, bilateral.
2.   Prior history of lumbar laminectomy, L5-S1.

POSTOPERATIVE DIAGNOSES:
1.   Lumbar spinal stenosis at L3-4, bilateral.
2.   Prior history of lumbar laminectomy, L5-S1.

PROCEDURES PERFORMED:
1.   Lumbar laminectomy at L3-4, bilateral with bilateral
     foraminotomy and partial facetectomies.
2.   Use of microscope for microsurgical techniques bilaterally
     at the L3-4 level.
3.   Use of fluoroscopy for radiographic interpretation.

CO-SURGEON:  Peter H. DeNoble, M.D.

ANESTHESIA:  General anesthesia.

BLOOD LOSS:  Less than 50 mL.

COMPLICATIONS:  There were no complications.

DISPOSITION:  The patient tolerated the procedure well.  The
patient was taken to the postoperative recovery room in stable
condition.

INDICATIONS FOR PROCEDURE:  The patient is a 58-year-old
gentleman who has had a history of lower back pain worsening for
past couple of years along with bilateral leg pain and numbness
and difficulty ambulating with increased pain.  He underwent
prior laminectomy in the L5-S1 segment almost 10 years ago and
he has done well with that.  He had degenerative disk at L5-S1
that has been present for a while.  He ended up getting an MRI
that showed moderate to severe stenosis at L3-4 with impingement
on the neural element centrally and also laterally as the nerves
traverse.

KS/SN/sudovac027/FST-19922085
D:  12/06/16 09:28 A CST
T:  12/07/16 01:49 A CST

RE: ⬛⬛⬛⬛, John
OPERATIVE REPORT
PAGE 2

At this point, treatment options were discussed with the
patient. Obviously, he had stenosis at L3-4 along with
degenerative changes at L5-S1.

Because of persistent leg pain, I found the symptoms neurogenic
claudication, surgery to do laminectomy at L3-4 was recommended
prior to doing a fusion operation at L5-S1. The patient
understood this and he wanted to proceed with plan of operation.
He had failed conservative form of treatment including epidural
injections and physical therapy and wanted to proceed with
surgery. He was medically optimized and scheduled the surgery.
The risks and benefits of surgery, and alternatives, achieving
including nonsurgical were discussed with him in great detail.
The risks including the possibility of neurological injury,
durotomy, persistent pain, need for future surgery, additional
level of disease, persistent symptomatology with the back pain
and with leg pain were discussed, infection, another
complications including possibility of pulmonary emboli, stroke,
and myocardial infarction were all discussed. The patient
understood this and wanted to proceed with plan of operation.

**DESCRIPTION OF PROCEDURE:** The patient was identified in the
preoperative holding area where he was given IV antibiotics. He
was taken to the operating room, where a time out was held with
surgical team, anesthesia team, and nursing team. He was given
anesthesia and successfully intubated. The patient was given
anesthesia was successfully intubated. Sequential compression
stockings were placed and the patient was then transferred to
the operating room table on a Wilson frame, arms were laid to
the side, and the head was held in neutral. All bony
prominences were padded. The lumbar region was prepped and
draped in sterile fashion. The L3-4 level was identified. At
this point, 15 to 18 mm incision was made over the L3-4 segment.
The left side was addressed first. The skin was cut inline and
soft tissue was dissected to the level of the fascia. The
fascia was cut on the left side of spinous process and
dissection was carried out to the lamina of L3. Sequential
dilatation was performed and then 15 mm tube was docked over the
lamina of L3 and disk space L3-4 on the left side. The
microscope was brought in and the procedure was carried out
under direct microscopic vision. Laminectomy was carried out
with combination of high speed drill, Kerrison punch rongeur.

RE: ████████, John
OPERATIVE REPORT
PAGE 3

It was noted that there was significant hypertrophy of the facet
joints about 3 to 4 mm of facet joints were dissected as well.
Laminectomy was carried out from all the way proximal to either
superior part of L4 was also resected.

The ligamentum flavum was carefully resected and it was noted
that there was severe hypertrophy of the facet joint and the
ligamentum flavum, which was teased out and resected with micro
instruments and Kerrison punch and rongeurs allowing for
excellent decompression of thecal sac proximally and distally.
The position was confirmed with fluoroscopic imaging for the
level of decompression medially as well and centrally,
decompression was carried out. Once satisfactory decompression
was carried out, the thecal sac towards the neural element and
central canal of the left side. The retractors were removed.
Hemostasis was achieved with combination of electrocautery and
standard bipolar touch. Attention was then turned to the right
side in similar fashion. In a similar fashion, a subperiosteal
dissection was carried out over the lamina of L3-4 on the right
side. Sequential dilatations were performed. The combination
of high speed drill and Kerrison punch rongeurs were carried out
and laminectomy was carried out in similar fashion. The
ligamentum flavum was visualized. The partial facetectomy was
carried out and bilateral foraminotomy was also carried out.
The ligamentum flavum was removed and thecal sac was allowed to
extend and decompression was carried out proximally and distally
all the way beyond the level of the start of the lamina of L4
proximally as well and the thecal sac was completely
decompressed. The wound was thoroughly irrigated. At this
point, adequate decompression pulsations of the thecal sac were
noted. Hemostasis was achieved using combination of
electrocautery in standard type bipolar types bilaterally. The
retractor system was removed. Hemostasis was adequate. The
muscle was allowed to approximate. The fascia was closed with 0
Vicryl suture, subcutaneous tissue was closed with 2-0 Vicryl
and the skin was closed with 3-0 Monocryl subcuticular stitch
followed by Dermabond, Steri-Strips, and Mastisol.

RS/SH/sndovmt.C27/FST-199220d5
D:  12/06/16 C9:28 A CST
T:  12/07/16 C1:49 A CST

RE: ████████ John
OPERATIVE REPORT
PAGE 4

Sterile dressing was applied, and the patient was then
transferred to a stretcher in stable condition.


Kumar Sinha, M.D.


KS/SN/sndovmt627/FST-19022085
D:  12/06/16 C9:28 A CST
T:  12/07/16 C1:49 A CST

# EXHIBIT B

**Right to Amend**

If you feel the medical information we have is incorrect or incomplete, you may ask us to amend it. We will provide an amendment form which you must complete. You must provide a reason which must support your request. In the absence of a reason we will deny your request.

**Rights to an Accounting of Disclosure**

We will keep an accounting of all disclosures we made about you. You may request this list in writing and must state a time period no longer than six years and may not include dates before April 14, 2003.

**Right to Request Restrictions**

You have the right to request a restriction on the medical information we disclose for treatment, payment, operations or your care givers and other involved persons. *We are not required to agree with your request.* We will comply with your request unless the information is needed for emergency treatment. Your request for limitations must be made in writing and must include what information you want limited and to whom you want these limits to apply.

**Changes to this Notice**

We reserve the right to change this notice and apply the changes to information we already have about you or may receive in the future. We will post a copy of the current notice in the office. The effective date will appear in the upper right hand corner. We will offer you a copy of the current notice.

**Complaints**

If you believe that your rights have been violated, you may file a complaint with our office. Your complaint must be made in writing and addressed to Doranne Moncavage, University Spine Center. No complaints will be acknowledged by phone.

## Assignment and Release

I, the undersigned, certify that I (or my dependents) have insurance coverage with **Oxford Health** and assign directly to University Spine Center, all insurance benefits, if any, otherwise payable to me for the services rendered. I understand that I am financially responsible for all charges, whether or not paid by insurance. I hereby authorize the doctor to release all information necessary to secure the payment of benefits. I authorize the use of this signature on all insurance submissions.

⊁ **Responsible Party Signature:** _____    **Relationship:** *Spouse*  **Date:** 4/1/16

## Acknowledgement of Receipt of Privacy Notice

Our notice of Privacy Practices provides information about how we may use and disclose protected health information about you. You have the right to review our notice and ask questions about our privacy practices. The terms of this notice may change. Upon request a copy of our revised notice will be made available to you. By signing this list you acknowledge that you have received our Notice of Privacy Practices.

**Name of Patient:** John _____    **Date:** 4/1/16

⊁ **Signature of Patient/ Guardian** _____

Please release any information to the following people:

_____

## Medicare Authorization

I request that payment of authorized Medicare benefits be made either to me or on behalf to University Spine Center, services furnished to me by University Spine Center. I authorize any holder of medical information about me to release to the Health Care Financing Administration and its agents any information needed to determine these benefits or the benefits payable for related services. I understand my signature requests that payment be made and authorizes release of medical information necessary to pay the claim. If "other health insurance" is indicated in item 9 of the HCFA 1500 form or elsewhere on other approved claim forms or electronically submitted claims, my signature authorizes release of information to the insurer or agency shown. In Medicare assigned cases, the physician or supplier agrees to accept the charge determination of the Medicare carrier as the full charge, and the patient is responsible only for the deductible, coinsurance, and non-covered services. Coinsurance and the deductible are based upon the charge determination of the Medicare carrier.

⊁ **Beneficiary Signature:** _____    **Date:** _____

Effective October 22, 2007

# EXHIBIT C

OXFORD LIBERTY HEALTH PLAN
PO BOX 29130
HOT SPRINGS AR 71903

CARRIER

1500

# HEALTH INSURANCE CLAIM FORM

APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE 08/05

PICA | PICA

1. MEDICARE (Medicare #) [ ] MEDICAID (Medicaid #) [ ] TRICARE CHAMPUS (Sponsor's SSN) [ ] CHAMPVA (Member ID#) [ ] GROUP HEALTH PLAN (SSN or ID) [ ] FECA BLK LUNG (SSN) [ ] OTHER (ID) [ ]

1a. INSURED'S I.D. NUMBER (For Program in Item 1): 1189035002

2. PATIENT'S NAME (Last Name, First Name, Middle Initial): [redacted] JOHN

3. PATIENT'S BIRTH DATE MM DD YY — SEX M [X] F [ ]

4. INSURED'S NAME (Last Name, First Name, Middle Initial): [redacted] JOHN

5. PATIENT'S ADDRESS (No., Street): [redacted]

6. PATIENT RELATIONSHIP TO INSURED: Self [X] Spouse [ ] Child [ ] Other [ ]

7. INSURED'S ADDRESS (No., Street): [redacted]

CITY [redacted] STATE

8. PATIENT STATUS: Single [ ] Married [ ] Other [ ]

CITY [redacted] STATE [redacted]

ZIP CODE [redacted] TELEPHONE (Include Area Code) ( )

Employed [ ] Full-Time Student [ ] Part-Time Student [ ]

ZIP CODE [redacted] TELEPHONE (Include Area Code) ( )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER: AT2285

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (Current or Previous) [ ] YES [X] NO

a. INSURED'S DATE OF BIRTH MM DD YY [redacted] SEX M [X] F [ ]

b. OTHER INSURED'S DATE OF BIRTH MM DD YY SEX M [ ] F [ ]

b. AUTO ACCIDENT? [ ] YES [X] NO PLACE (State)

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT? [ ] YES [X] NO

c. INSURANCE PLAN NAME OR PROGRAM NAME: OXFORD LIBERTY HEALTH PLAN

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN? [ ] YES [X] NO *If yes, return to and complete item 9 a-d.*

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED SIGNATURE ON FILE DATE 05 17 2016

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED SIGNATURE ON FILE

PATIENT AND INSURED INFORMATION

14. DATE OF CURRENT: MM DD YY ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS, GIVE FIRST DATE MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION FROM MM DD YY TO MM DD YY

17. NAME OF REFERRING PROVIDER OR OTHER SOURCE 17a. 17b. NPI

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES FROM MM DD YY TO MM DD YY

19. RESERVED FOR LOCAL USE: PART OF AN APPEAL

20. OUTSIDE LAB? [ ] YES [X] NO $ CHARGES 0

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (Relate Items 1,2,3 or 4 to Item 24E by Line) 0

1. LM50.12 M48.02 3. IM47.812

2. 4.

22. MEDICAID RESUBMISSION CODE ORIGINAL REF. NO. 6200110629.01

23. PRIOR AUTHORIZATION NUMBER

| | 24. A. DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID. QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 05 17 16 | 05 17 16 | 24 | | 22551 | | A B C | 57885 00 | 1 | | ZZ / NPI | 207XS0117X / 1194919340 |
| 2 | 05 17 16 | 05 17 16 | 24 | | 22845 | | A B C | 26016 00 | 1 | | ZZ / NPI | 207XS0117X / 1194919340 |
| 3 | 05 17 16 | 05 17 16 | 24 | | 22851 | | A B C | 16260 00 | 1 | | ZZ / NPI | 207XS0117X / 1194919340 |
| 4 | 05 17 16 | 05 17 16 | 24 | | 20936 | | A B C | 2601 00 | 1 | | ZZ / NPI | 207XS0117X / 1194919340 |
| 5 | 05 17 16 | 05 17 16 | 24 | | 20930 | | A B C | 2106 00 | 1 | | ZZ / NPI | 207XS0117X / 1194919340 |
| 6 | | | | | | | | | | | NPI | |

25. FEDERAL TAX I.D. NUMBER SSN [ ] EIN [X]: 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

26. PATIENT'S ACCOUNT NO.: 5909437V44664573

27. ACCEPT ASSIGNMENT? (For govt. claims, see back) [ ] YES [X] NO

28. TOTAL CHARGE $ 104868 00

29. AMOUNT PAID $ 0 00

30. BALANCE DUE $

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)

KUMAR G SINHA MD

SIGNED DATE 08 31 2016

32. SERVICE FACILITY LOCATION INFORMATION

MILLENNIUM SURGICAL CTR
925 CLIFTON AVE
CLIFTON, NJ 07011-2724

a. b.

33. BILLING PROVIDER INFO & PH. # (888) 3238823

UNIVERSITY SPINE CENTER PC
504 VALLEY RD 2ND FLR
WAYNE, NJ 07470-3534

a. 1023224029 b.

PHYSICIAN OR SUPPLIER INFORMATION

OXFORD LIBERTY HEALTH PLAN
PO BOX 29130

HOT SPRINGS AR 71903

1189035002

JOHN ████████████ X                    ████ JOHN

████████████████        ▲ ▲ X            ████████████████

████████            ████                ██████████                    ██

██████                                  ████████

                                        AT2285

                                        ████████████              X

                            X

                            X

                            X           OXFORD LIBERTY HEALTH PLAN

                                                X

SIGNATURE ON FILE        12 06 2016        SIGNATURE ON FILE

OP REPORT ATTACHED                                    X              0

M48.06                            0              7006207406

                                                        G2 P4061378
12 06 16  12 06 16  24      63047          A      5525400   1      1194919340
                                                        G2 P4061378
12 06 16  12 06 16  24      69990          A      648000    1      T194919340

204080164        X      5909437V47534410      X      6173400      000

                        MILLENNIUM SURGICAL CTR              888  3238823
                        925 CLIFTON AVE              UNIVERSITY SPINE CENTER PC
                        CLIFTON, NJ 07011-2724              PO BOX 21146
                                        NEW YORK, NY 10087-1146
KUMAR G SINHA MD                        1023254029
        04 26 2017

# EXHIBIT D

**REMITTANCE ADVICE**

Check/EFT # 1538946     Check Date : 2/3/2017     **Check Amt :**    1,772.27

Payer Address      Payee Address

OXFORD HEALTH      UNIVERSITY SPINE CENTER PC
4 RESEARCH DRIVE      504 VALLEY ROAD
SHELTON, CT 06484      WAYNE, NJ 07470     NPI # : 1023224029

| SERV DATE | POS | Charge# | PD-PROC/MODS | PD-NOS SUB-NOS | BILLED SUB-PROC | ALLOWED GRP/CARC | DEDUCT CARC-AMT | COINS ADJ-QTY | PROV PD |
|---|---|---|---|---|---|---|---|---|---|
| NAME: ███████, JOHN | | HIC: 189035002 | | ACNT: 5909437V47534410 | | | ICN: 7006207406 | MOA: | |
| 120616 120616 | | 47534410 | 63047 | 1 | 56,254.00 | 1,772.27 | 0.00 | 0.00 | 1,772.27 |
| | | | | | | PR-45 | 53481.73 | | |
| 120616 120616 | | 47534412 | 69990 | 1 | 6,480.00 | | 0.00 | 0.00 | 0.00 |
| N19: | | | | | | | | | |
| | | | | | | PR-97 | 6480 | | |
| PT RESP | 59,981.7 | | CLAIM TOTALS | | -1,734.01 | 1,772.27 | 0.00 | 0.00 | 1,772.27 |
| ADJ TO TOTALS: | | INTEREST | 0.00 | | LATE FILING CHARGE | | 0.00 | NET | 1,772.27 |

CLAIM STATUS: PROCESSED AS PRIMARY
CLAIM FORWARDED TO (1) :
CLAIM FORWARDED TO (2) :

REMITTANCE ADVICE

Check/EFT # 405743                              Check Date : 8/26/2016          Check Amt :        4,557.62

**Payor Address**                              **Payee Address**

OXFORD HEALTH                                  UNIVERSITY SPINE CENTER PC
4 RESEARCH DRIVE                               504 VALLEY ROAD
SHELTON, CT 06484                              WAYNE, NJ 07470          NPI # : 1023224029

| SERV DATE | | POS | Charge# | PD-PROC/MODS | PD-NOS | BILLED | ALLOWED | DEDUCT | COINS | PROV PD |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | SUB-NOS | SUB-PROC | GRP/CARC | CARC-AMT | ADJ-QTY | |
| NAME: ████ JOHN | | | HIC: 1189035002 | | ACNT: 5909437V44664573 | | ICN: 6200110629.01 | | MOA: | |
| 051716 | 051716 | | 44664573 | 22551 | 1 | 57,885.00 | 2,746.69 | 0.00 | 405.88 | 2,340.81 |
| | | | | | | | PR-45 | 55138.31 | | |
| 051716 | 051716 | | 44664574 | 22845 | 1 | 26,016.00 | 1,168.93 | 0.00 | 0.00 | 1,168.93 |
| | | | | | | | PR-45 | 24847.07 | | |
| 051716 | 051716 | | 44664576 | 22851 | 1 | 16,260.00 | 651.01 | 0.00 | 0.00 | 651.01 |
| | | | | | | | PR-45 | 15608.99 | | |
| 051716 | 051716 | | 44664577 | 20936 | 1 | 2,601.00 | 203.14 | 0.00 | 0.00 | 203.14 |
| | | | | | | | PR-45 | 2397.86 | | |
| 051716 | 051716 | | 44664578 | 20930 | 1 | 2,106.00 | 193.73 | 0.00 | 0.00 | 183.73 |
| | | | | | | | PR-45 | 1912.27 | | |
| PT RESP | 100,310. | | | CLAIM TOTALS | | 4,868.00 | 4,963.50 | 0.00 | 405.88 | 4,557.62 |
| ADJ TO TOTALS: | | INTEREST | | 0.00 | | LATE FILING CHARGE | 0.00 | | NET | 4,557.62 |

CLAIM STATUS:   PROCESSED AS PRIMARY
CLAIM FORWARDED TO (1) :
CLAIM FORWARDED TO (2) :

Check/EFT # 368343                              Check Date : 8/22/2016          Check Amt :        0.00

**Payer Address**                              **Payee Address**

OXFORD HEALTH                                  UNIVERSITY SPINE CENTER PC
4 RESEARCH DRIVE                               504 VALLEY RD STE 203
SHELTON, CT 06484                              WAYNE, NJ 07470          NPI # : 1023224029

| SERV DATE | | POS | Charge# | PD-PROC/MODS | PD-NOS | BILLED | ALLOWED | DEDUCT | COINS | PROV PD |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | SUB-NOS | SUB-PROC | GRP/CARC | CARC-AMT | ADJ-QTY | |
| NAME: ████ JOHN | | | HIC: 1189035002 | | ACNT: 5909437V44664573 | | ICN: 6200110629 | | MOA: | |
| 051716 | 051716 | | 44664573 | 22551 | 1 | 57,885.00 | | 0.00 | 0.00 | 0.00 |
| N29 | | | | | | | OA-150 | 57885 | | |
| 051716 | 051716 | | 44664574 | 22845 | 1 | 26,016.00 | | 0.00 | 0.00 | 0.00 |
| N29 | | | | | | | OA-150 | 26016 | | |
| 051716 | 051716 | | 44664576 | 22851 | 1 | 16,260.00 | | 0.00 | 0.00 | 0.00 |
| N29 | | | | | | | OA-150 | 16260 | | |
| 051716 | 051716 | | 44664577 | 20936 | 1 | 2,601.00 | | 0.00 | 0.00 | 0.00 |
| N29 | | | | | | | OA-150 | 2601 | | |

# EXHIBIT E

June 13, 2017



**CALLAGY LAW**
Courageous · Compassionate · Committed

Mack-Cali Centre II
650 From Rd – Suite 565
Paramus, New Jersey 07652
Email: info@callagylaw.com
Web: callagylaw.com
Office: 201.261.1700
Fax:    201.261.1775

Sean R. Callagy+*

**Partner**
Michael J. Smikun+*
David L. Aromando+*
Brian P. McCann+*
Christopher R. Cavalli+

Jo'Anne Baio LaGreca+*
Thomas LaGreca*
James Greenspan+*
Tamara E. Kotsev+*
Lynne Goldman+*
Christopher R. Miller+
Samuel S. Saltman+*
Michael Gottlieb+*
Robert J. Solomon+*
Casey L. Wertheim+*
Daniel C. Nowak+
Emily J. Harris+
Alejandro Perez#
Sarah N. Goldenthal+*
Leigh A. Frattolillo+*
Daniel G. Spafford+
Paul File+*

+Member of the New Jersey Bar
*Member of the New York Bar
^Member of the Connecticut Bar
#Member of the Arizona Bar

**New York Office:**
1133 Broadway
Suite 708
New York, NY 10010
(Reply to NJ Office)

**Arizona Office:**
668 North 44th St
Suite 300
Phoenix, AZ 85008
Office: 602.687.5844

<u>Via Mail & Fascimile (800-303-9902)</u>
Oxford
Provider Appeals Department
P.O. Box 7016
Bridgeport, CT 06601-7016

    RE:    Provider: University Spine Center
               Date of Service: 2016-05-17, 2016-12-06
    Patient: John ▮▮▮▮▮
    Claim #: 6200110629

Dear Appeal Department Representative,

    We represent the provider named above who has obtained an assignment of benefits from the patient named above as such this firm is the patient's authorized representative for purposes of the appeal requested below.

    Kindly be advised that this firm, and more specifically the undersigned, represents University Spine Center in the above-referenced matter. Kindly accept this **SECOND NOTICE OF APPEAL.**
**We represent the provider named above who has obtained an assignment of benefits from the patient named above as such this firm is the patient's authorized representative for purposes of the appeal requested below.**

    Attached hereto, please find the following documents that University Spine Center is relying upon in support of this appeal:

    1.  Health Insurance Claim Form ("HICF") for John ▮▮▮▮▮▮, and
    2.  Operative Report and relevant records for John ▮▮▮▮▮

    The Health Insurance Claim Forms ("HICF") submitted by the provider to the claim payer and the Explanations of Benefits ("EOB") that that claim payer sends to the provider set forth the amounts billed and amounts paid in this case. The HICF is a single-sided, one page document which lists all of the medical services performed on a particular date or dates of service. The amount billed is seen side-by-side with the procedure or service that supports the charge. The EOB again provides the amount billed for procedure or service performed on a particular date of services. Additionally, the EOB provides the amount paid and, where applicable, codes that correspond to reasons for a disparity in the amount billed and the amount paid. Thus, these two documents are necessarily the starting point for establishing the particular provider's UCR rate in a particular case.

    On behalf of University Spine Center, we have previously requested

that you provide documentation you believe supports your different determination of Usual and Customary Rates. Specifically, we requested that you provide the following documentation at the time of our First Appeal:

- The name, address and contact information of any other party of interest including but not limited to the Plan Administrator and named or un-named fiduciaries, Claims Administrator, Third-Party Administrator, additional Insurance Companies involved in the claims process, and any other entities involved in the claims process;
- A true and exact copy of the applicable Health Insurance Policy, Summary Plan Description, and Plan for the time period at issue;
- The Plan Name, Plan Sponsor (including its name and address for service of legal process); Plan Claim Appeal Procedure, including all deadlines for filing appeals;
- Complete Explanation of Benefits, or Adverse Benefit Determination;
- The specific reason(s) for your denial of the full amount of the claim submitted;
- Reference to the specific Plan provisions on which your determination was based;
- A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
- The methodology by which you computed the Usual and Customary Rate, including copies of all specific rules, guidelines, protocols, or other similar criteria on which you relied in making this benefit determination;
- If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances;
- Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by the Plan to this healthcare provider and similar healthcare providers for comparable services as an in network service;
- Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by the Plan to this healthcare provider and similar healthcare providers for comparable services as an out of network service;
- The name of the publication, database, documentation, Medicare guidelines etc., of all documents and databases used in computing the Usual and Customary Rate, and copies of all such documents;
- Provide copies of any and all algorithm, formula, procedure or fee schedule used to derive the customary and reasonable reimbursement rate in this matter;
- Copies of any and all documentation, including but not limited to manuals, statutes, rules, regulations, books and/or industry standards which refer to, reflect or otherwise relate to the computation of reimbursement for the date of service in question.

To the extent this information has not been previously requested, we are hereby requesting it today. This request for documents is pursuant to United States Department of Labor regulations requiring Plans to make disclosure of its claims procedures. See 29 C.F.R. 2560.503-1. **The Plan is required to provide this requested documentation upon request and free of charge.**

This requested information is critical for us to analyze whether your determinations violate the Plan's fiduciary obligation to make benefit determinations in the interests of the Plan's beneficiaries. To date, you have not provided this documentation. As you are aware, the law requires you to provide this documentation based upon our previous request, and provides penalties to the Plan Administrator for failure to comply with this request. **If you do not turn over all of these requested documents, we will seek to enforce the applicable penalty provisions in a Court of competent jurisdiction. Furthermore, if you continue to refuse to disclose the basis and methodology of the Plan's benefit determination in this case, we will argue that your unsupported benefit determination is arbitrary and capricious, and/or that it violates the Plan's**

fiduciary duty in the making of benefit determinations. If your refusal to provide this documentation leads to us filing a lawsuit, we will seek reimbursement of costs and fees, including reasonable attorney's fees as allowed by Section 502(g) of ERISA, in such action.

For the foregoing reasons, University Spine Center respectfully requests that your initial adverse claim determination be modified and additional payment be issued without delay.

Very truly yours,
CALLAGY LAW, PC

Michael Gottlieb, Esq.

Encl.
MG/jc



Arash Emami, M.D.
Ki Soo Hwang, M.D.
Kumar Sinha, M.D.
Michael Faloon, M.D.
Pamela D'Amato, M.D.
Michelle Brenner, N.P.
Spine Surgery and Spinal Deformities

December 7, 2016

Oxford Health Plans
PO Box 29136
Hot Springs, AR  71903

Re: John ████████
ID#: 1189035002
DOS: 05/17/2016
Provider: Kumar Sinha, MD

Dear Director of Claims:

We are in receipt of your letter dated 11/03/2016 denying our Level 1 appeal leaving the member responsible for the balance of $104462.12.  Per the letter the claim was paid at 140% of the Medicare fee schedule since Dr. Sinha is a non-participating provider with Oxford Health Plans.   Since the payment received *is not* 140% of the Medicare fee schedule. Please accept this letter as a **Level 2 appeal** to reprocess the claim and pay the correct fee for each of the following procedure codes:

Medicare Fee Schedule:

CPT 22551 = $2162.12 x 140% = $3026.97
CPT 22845 = $ 929.16 x 140% = $1300.82
CPT 22851 = $ 515.02 x 140% = <u>$721.28</u>
Total Payment                               $5049.07
Total Payment Paid                      <u>$4160.75</u>
**Balance Due**                             $ 888.32

Kindly reprocess the claim for immediate additional payment of $888.32 in accordance with the patient's Out of Network Reimbursement policy as stated in your letter.  Please note that you have on file the patient's written authorization for University Spine Center to appeal on his behalf. Thank you for your anticipated cooperation and immediate attention to this matter.

Sincerely,


Linda Fiala
Appeals Specialist

504 Valley Road, 2nd Fl.
Wayne, NJ 07470
Tel: (973) 686-0700
Fax: (973) 686-0701

1135 Broad Street, 3rd Fl.
Clifton, NJ 07013
Tel: (973) 686-0700
Fax: (973) 686-0701

51 Route 23 South
Riverdale, NJ 07457
Tel: (973) 686-0700
Fax: (973) 686-0701

68 Essex Street
Millburn, NJ 07041
Tel: (973) 686-0700
Fax: (973) 686-0701

95 University Place, 8th Fl.
New York, NY 10003
Tel: (212) 604-1300
Fax: (973) 686-0701

 

Arash Emami, M.D.
Ki Soo Hwang, M.D.
Kumar Sinha, M.D.
Michael Faloon, M.D.
Pamela D'Amato, M.D.
Michelle Brenner, N.P.
*Spine Surgery and Spinal Deformities*

February 22, 2017

Oxford
Attn: Correspondence Unit:
PO Box 7081
Bridgeport, CT 06601-7081

Re: John [redacted]
ID#:1189035002
DOS: 12/06/2016
Provider: Kumar Sinha, MD

Dear Director of Claims:

This **NOTICE OF APPEAL** is being sent in reference to the benefit payment received for the above mentioned patient on the above mentioned date of service.

It is our understanding that benefits were significantly underpaid for procedure code 63047 due to your incorrect determination that the billed charges are more than the allowable and/or usual and customary rate for the procedures performed. However, the quality of service that the patient received from Dr.Sinha goes above the usual and customary standards by providing the best possible care available therefore, the reduction in payment is unsubstantiated and unjustified and we are demanding a reprocessing for additional payment immediately.

It is our position that additional benefits should be released due to the high risk of neurological complications and the level of difficulty involved in this surgery. I have attached a copy of the operative report, which thoroughly documents the complexities and challenges this surgery presented to the surgeons as well as describes the procedure performed. We ask that you note how involved and difficult the procedure was as well as the time and the skill required of the surgeons to achieve a favorable outcome.

Based on this information we demand the claim be reprocessed for additional payment. If you further deny additional payment we formally request that you provide a written explanation citing the applicable policy language, within 30 days, which justifies the reduction so that we may determine the patient's liability. Note: This request for documentation is pursuant to the United States Department of Labor regulations requiring plans to disclose claim procedures. (29 C.F.R. 2560.503-1. You are required to provide this requested documentation upon request and free of charge.

We look forward to your favorable reprocessing and resulting payment on this claim. Should you have any questions, do not hesitate to contact me.

Sincerely,

Linda Fiala
Appeals Dept.

*Reply to Billing Office:*
*Practicemax*
*1620 Route 22 Brewster, NY 105009*

504 Valley Road, 2nd Fl
Wayne, NJ 07470
Tel: (973) 686-0700
Fax: (973) 686-0701

1135 Broad Street, 3rd Fl
Clifton, NJ 07013
Tel: (973) 686-0700
Fax: (973) 686-0701

51 Route 23 South
Riverdale, NJ 07457
Tel: (973) 686-0700
Fax: (973) 686-0701

68 Essex Street
Millburn, NJ 07041
Tel: (973) 686-0700
Fax: (973) 686-0701

95 University Place, 8th Fl
New York, NY 10003
Tel: (212) 601-1300
Fax: (973) 686-0701



Arash Emami, M.D.
Ki Soo Hwang, M.D.
Kumar Sinha, M.D.
Michael Faloon, M.D.
Pamela D'Amato, M.D.
Michelle Bremer, N.P.
Spine Surgery and Spinal Deformities

August 4, 2016

Oxford Health Plans
PO Box 29136
Hot Springs, AR 71903

Re: John ███████
ID#: 1189035002
DOS: 05/17/2016
Provider: Kumar Sinha, MD

Dear Director of Claims:

We are in receipt of your payment for services rendered to the above referenced patient by Dr. Sinha. Dr. Sinha is a non-participating provider with Oxford and therefore not under a contractual agreement to accept re-pricing of his fee without his written consent. The physician's fee was $104,868.00 and the claim paid $4557.62. Your payment is inappropriate and unacceptable. The reimbursement does not cover the cost of the surgery to the physician or practice. The reimbursement is more reflective of fracture care not spine surgery which has a high risk of neurological complications. Dr. Sinha's expertise and additional specialized training warrants a higher reimbursement. In addition, you are placing a heavy financial burden on your member. Therefore, we are requesting the claim be immediately reprocessed and priced for out of network provider based upon the billed charges.

If in the future you wish to negotiate an acceptable rate, please contact this office. Should your company not release additional benefits, please provide a written explanation, which justifies the reduction so that we may determine our next course of action and the member's liability.

Thank you for your anticipated cooperation and immediate attention to this matter. We would appreciate your written response to this reconsideration request be sent to the billing office address below.

Sincerely,

Linda Fiala
Appeals Specialist

*Reply to Billing Office:*
*Practicemax*
*1620 Route 22 Brewster, NY 10509*

504 Valley Road, 3rd Fl
Wayne, NJ 07470
Tel: (973) 686-0700
Fax: (973) 686-0701

7135 Broad Street, 3rd Fl
Clifton, NJ 07013
Tel: (973) 686-0700
Fax: (973) 686-0701

51 Route 23 South
Riverdale, NJ 07457
Tel: (973) 686-0700
Fax: (973) 686-0701

68 Essex Street
Millburn, NJ 07041
Tel: (973) 686-0700
Fax: (973) 686-0701

95 University Place, 9th Fl
New York, NY 10003
Tel: (212) 604-1360
Fax: (973) 686-0701